

FILED

MAY 28, 2010

KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

———————————————

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | NO. 2:08-CV-203-J |
| $76,914.00 IN U.S. CURRENCY, | § | |
| | § | |
| Respondent, | § | |
| | § | |
| JEAN D. PIERRE, | § | |
| | § | |
| Claimant. | § | |

## MEMORANDUM OPINION AND ORDER

The Government brought this civil action pursuant to 21 U.S.C. §881(a)(6) seeking forfeiture of $76,914.00 in U.S. currency.  Jean D. Pierre claimed $25,633.00 of the amount. The matter was tried before the Court.

### FINDINGS OF FACT

The following facts were stipulated and are adopted by the Court.

1. On May 17, 2008, DPS Trooper Ben Dollar stopped a van bearing a New Jersey license plate traveling eastbound on I-40 in Carson County, Texas for a traffic violation (passing an authorized emergency vehicle without reducing speed or yielding the lane).

2. Amir Dunlap, the van's driver, could not produce a driver's license; Val Cherestal and the Claimant were passengers in the van.

3.  Dunlap and Cherestal said they were traveling from Tempe, Arizona; Cherestal stated they had gone to see his friend's mother, and they had stayed at the mother's house one night and had then gotten a hotel room.

4.  Cherestal avoided eye contact with Trooper Dollar when he spoke, and Cherestal's hands shook as he handed Dollar his driver's license.

5.  While sitting inside Trooper Dollar's car, Dunlap stated his license was suspended in New Jersey; he had previously been arrested for drug possession, including in New York for about 20 grams of cocaine; he and the others were coming from Tempe headed to New Jersey; they had gone to Tempe for Mother's Day; he and his friend had stayed at the mother's house, but the other friend had a girlfriend in Tempe and stayed with her; and the van was Cherestal's car.

6.  Inside Trooper Dollar's car, Dunlap exhibited sweat beading on his upper lip and forehead; shaking of his arms and hands; and continual stretching his arms, wrists, and legs.

7.  DPS Communications could not find a license for Dunlap, but reported he had a criminal history involving weapons, drugs, and assault on a police officer.

8.  DPS Communications reported a criminal history for drugs and resisting arrest for Cherestal.

9.  Dunlap gave Trooper Dollar consent to search the van.

10. Approximately 13 minutes into the traffic stop, the van was searched.

11. DPS Troopers noticed that the van's rear roof area appeared to have been altered, and Trooper Dollar saw stacks of currency in a plastic bag through a small hole when he removed a small interior light in the rear roof area.

12. Trooper Dollar had located an identical compartment in another van on May 10, 2008.

13. Claimant, Cherestal, and Dunlap were handcuffed, advised of their rights, and placed in Trooper Dollar's patrol cars.

14. Inside the car, Claimant told Dunlap that firearms charges "aren't that bad in this state" and money laundering "ain't shit", and Claimant wondered "since there weren't any drugs, how can they keep the money."

15. Concerning the search, Dunlap said they would have searched anyway and have gotten "the dog and all that," and Claimant replied the dog wouldn't have "sniffed nothing"; Dunlap stated he figured it would be like in Oklahoma where they looked around.

16. The van had previously been stopped by police in Oklahoma, but the police did not find the money when the van was searched.

17. Inside the car, Claimant asked why they couldn't say they were going to buy some property, and why if they had some property, law enforcement wouldn't go with that.

18. Inside the car, Dunlap said the fact that all his criminal history came back really made it bad.

19. Inside the car, Claimant asked what Dunlap had - 14 - and that made it close to 70 or 80.

20. Inside the car, Dunlap stated, "all of this for nothing, all of the moves we made, back and forth from the airports, all for nothing."

21. $76,914.00 in U.S. currency in two bags, two pistols, and two loaded magazines were found inside the compartment in the van.

22. In a subsequent interview with DPS Lieutenant Lucinda Russell, Claimant lied to a Lieutenant Russell about the purpose of the travel by him, Cherestal, and Dunlap when he

told Lieutenant Russell that he had gone to Tempe to visit his mother and had stayed at her house; Claimant's mother does not live in Arizona.

23. In the interview, Claimant stated he was shocked about the currency and guns found in the van; it did not belong to him, and he didn't know to whom the money belonged.

24. Claimant was indicted for money laundering in July 2008 in Carson County, Texas, specifically for transporting the proceeds of the sale of a controlled substance on or about May 17, 2008. This case was dismissed for insufficient evidence on January 19, 2010.

25. Claimant was convicted for obtaining/selling controlled substance in public in April 1996, April 1999, February 2000, July 2001, and September 2003.

26. Claimant was convicted of failure to give controlled substance to police in April 2001 and September 2003.

27. Claimant was convicted of possession of a handgun in November 2004.

28. Claimant was convicted of possession of controlled substance in February 2005.

29. Claimant was charged with possession of marijuana and marijuana equipment in August 2008 (three months after the Carson County traffic stop); that charge was later dismissed.

30. Cherestal and Dunlap were arrested for drug charges in November 2008 and were in jail in May 2009.

31. The currency found in the van was comprised of over three thousand three hundred (3300) bills, totaling $76,914.00 in U.S. currency. The currency was comprised of the following denominations: 104 $1.00 bills; 208 $5.00 bills; 350 $10.00 bills; 2286 $20.00 bills; 193 $50.00 bills; and 169 $100.00 bills.

32. Claimant had no income in 2005, 2006, 2007, and 2008 and did not file tax returns for those years.

33. Claimant sold illegal drugs in 2003.

34. In November 2009, Claimant was charged in Florida with possession of ecstasy with intent to sell, possession of narcotics paraphernalia, and giving a false name to a law enforcement officer. On January 7, 2010, Claimant was convicted in Florida for possession of Ecstasy and giving a false name and sentenced to two years probation.

35. Claimant's fingerprints were not found on any gun recovered in the van.

36. Claimant's DNA was not found on any guns recovered in the van.

37. No drugs were found in the vehicle in which Claimant was traveling.


The Court finds the following additional facts.

38. Claimant only alleges that $25,633.00 of the defendant property belongs to him and is not subject to forfeiture. Claimant does not contend that the remaining $51,281.00 is not subject to forfeiture.

39. Claimant and the other passengers were stopped traveling on Interstate-40. I-40 is a route drug traffickers often follow.

40. Amir Dunlap and Val Cherestal had a heightened level of nervousness that escalated throughout the traffic stop. While some nervousness is typical during a traffic stop, these individuals' heightened level of nervousness and the escalation of their nervousness caused Trooper Dollar suspicion.

41. The $76,914.00 in U.S. currency, two pistols, and two magazines were located in an altered compartment in the conversion van. The compartment was rigged with an electronic cylinder. This cylinder is designed to respond to an electric signal or a given series of electric signals. When the cylinder receives the electric signal(s) it extends,

opening the compartment quickly and then closing the compartment quickly.  The design of the compartment allows an individual to access the contents of the compartment rapidly.

42. The space used to create the compartment is naturally present in the frame of the van; however, the space was altered by after-market alterations.

43. These non-stock compartments are often created and used for illegal purposes.  DPS Troopers are trained to locate non-stock compartments such as the one in this case.

44. The defendant property was bundled into separate stacks and banded together with rubber bands inside the bags.

45. Claimant and passengers were not returning from a business scouting trip looking for real estate to open an urban clothing store, as asserted by Claimant.

46. The money was not placed in the concealed compartment to avoid placing the money in a suitcase because of car thieves, as asserted by Claimant.

47. The $25,633.00 Claimant alleges is not subject to forfeiture was not derived from his girlfriend or his mother, as asserted by Claimant.

48. Claimant has an extensive history of drug related convictions.  From 1996 through 2010, Claimant was convicted of at least nine drug-related offenses.

## CONCLUSIONS OF LAW

The government brings this action pursuant to 21 U.S.C. § 881(a)(6).  This Court has jurisdiction pursuant to 28 U.S.C. §§ l345 and l355(a).  Venue is proper under 28 U.S.C. § 1355(b)(1) and 28 U.S.C. § 1395(b).

21 U.S.C. § 881(a)(6) section states that "all moneys ... furnished or intended to be furnished ... in exchange for a controlled substance ..., all proceeds traceable to such an

exchange, and all moneys ... used or intended to be used to facilitate a violation of [the drug laws]" are "subject to forfeiture to the United States." 21 U.S.C. § 881(a)(6). "[T]he burden of proof is on the government to establish, by a preponderance of the evidence, that the property is subject to forfeiture…." 18 U.S.C. § 983(c)(1); *see also U.S. v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008). "The burden of showing something by a preponderance of the evidence … simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 622 (1993) (internal quotation marks omitted).

In determining whether the government has carried its burden to show the property is subject to forfeiture, courts analyze the totality of the circumstances. *E.g.*, *U.S. v. One 1987 Mercedes 560 SEL*, 919 F.2d 327, 331-32 (5th Cir. 1990); *U.S. v. $10,700.00 in U.S. Currency*, 258 F.3d 215, 227 (3rd Cir. 2001); *U.S. v. $99,990.00 in U.S. Currency*, 69 F.App'x 757, 763 (6th Cir. 2003); *U.S. v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 467 (7th Cir. 2005); *U.S. v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006). Based on the totality of the circumstances, the Court concludes the government has established by a preponderance of the evidence that the entire defendant currency is property subject to forfeiture under 21 U.S.C. §881(a)(6).

IT IS SO ORDERED.

Signed this 28th day of May 2010.

/s/ MARY LOU ROBINSON
**MARY LOU ROBINSON**
UNITED STATES DISTRICT JUDGE